# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CARLA JACKSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No.  1:24-cv-01565-SAB

ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

(ECF Nos. 15, 16)

Plaintiff Carla Jackson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in her analysis of Plaintiff's subjective testimony.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

///

1

## I.

## BACKGROUND

### A.    Procedural History

On November 11, 2020, Plaintiff filed Title II and Title XVI applications for a period of disability and disability insurance benefits, alleging disability beginning June 15, 2019.  (ECF No. 11, Administrative Record ("AR"), 17.)  Plaintiff's applications were initially denied on June 24, 2021, and denied upon reconsideration on October 5, 2021.  (Id.)  Plaintiff requested before a hearing before an ALJ.  On January 3, 2024, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ.  (Id.)  Plaintiff and vocation expert ("VE") Abbe May testified.  (Id.)  On February 27, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled.  (AR 34.)  On October 15, 2024, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2027, and that Plaintiff had not engaged in substantial gainful activity since June 15, 2019, the alleged onset date.  (AR. 19.)  The ALJ found that Plaintiff had the following severe impairments: migraine headaches; obesity; lumbar spine degenerative disc disease; and asthma.  As of February 2023, the claimant had the following additional severe impairments: right breast cancer, status post lumpectomy, chemotherapy, and radiation therapy.  (AR 19-20.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 21.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  Plaintiff could stand and/or walk for approximately six hours and sit for approximately six hours, in an eight-hour workday.  Plaintiff could not climb ladders, ropes and scaffold and could occasionally climb stairs and ramps.  Plaintiff could frequently stoop and crouch and occasionally kneel and crawl.  Plaintiff could not balance, as balance is defined by the Selective Characteristics of

Occupations of the Dictionary of Occupational Titles (SCO-DOT).  Plaintiff should have only occasional exposure to atmospheric conditions and could not perform work in near proximity to moving mechanical parts, nor work in high, unprotected places, as rated by the SCO-DOT. Plaintiff should not be exposed to greater than moderate level noise (as rated by the SOCDOT) without available hearing protection and should be permitted to wear tinted glasses, if desired. Plaintiff could understand, remember and carry out detailed, but not complex, instructions and tasks and should not work on moving conveyor belts or in jobs requiring hourly quotas.  Plaintiff could not operate motor vehicles.  (AR 23.)

The ALJ then found that Plaintiff was unable to perform any past relevant work, she was 38 years old on the alleged onset date, and she had at least a high school education.  (AR 32-33.) The ALJ discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (AR 33.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from June 15, 2019, through the date of the decision, February 27, 2024. (AR 34.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts.  (ECF No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (ECF Nos. 7, 9, 10.)  Thereafter, the parties filed their briefs on the matter. (ECF Nos. 15, 16, 17.)

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[1]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[2]  "[I]t is the responsibility of the ALJ, not the

---

[1] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20

claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support

C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ failed to adequately assess Plaintiff's subjective complaints in various ways. (ECF No. 15, pp. 17-26.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 16.) The Court agrees with the Commissioner.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she

alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

In addition, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225

(9th Cir. 2010).

In the decision, the ALJ discussed—at length—Plaintiff's testimony, including her analysis. The Court begins by summarizing the ALJ's identification of Plaintiff's relevant testimony.

The ALJ observed that Plaintiff testified that she experienced migraine headache episodes, from 2019 until around 2022, for which she had previously received medication and injections. (AR 23.) During that time, Plaintiff stated she experienced around 10 migraines in a typical month that on average lasted for up to 48 hours. (Id.) Since 2023, Plaintiff stated that her migraines were not as severe. (AR 23-24.)

Plaintiff also testified that she experienced back pain that limited physical activities and caused her to have to often lie down. (AR 24.) She experienced numbness that radiated from her back to her left leg on a daily basis that affected her sleep and ability to stand. (Id.) As a result of her back pain, Plaintiff stated she could not stand for more than 15 minutes, sit for more than 10 minutes, and lift and carry more than 10-11 pounds. (Id.) She further testified that she experienced numbness in her left leg and had to elevate that leg on a daily basis. (Id.)

> The claimant testified she was diagnosed with breast cancer in 2023 and was receiving ongoing treatment. She stated th[a]t she began chemotherapy treatment in April 2023 and recently completed this treatment. She stated she was undergoing immunotherapy and radiation therapy at the time of the hearing. Since her cancer diagnosis in 2023, the claimant alleged her tolerance for exertional activities such as sitting and standing is even less than they were prior to her diagnosis and she experienced neuropathy in her upper and lower extremities. Moreover, as a result of her cancer treatment, the claimant complained of side effects including brain fog, difficulty gathering her thoughts, stomach pain, elevated heart rate, and chest pain. The claimant testified she requires help with household chores and cooking and relies on other family members to complete these tasks. She alleged she is barely able to address her own self-care needs.

(Id.)

Regarding Plaintiff's mental impairments, the ALJ identified that Plaintiff alleged that she was receiving psychotropic medications and attending counseling for her mental health symptoms. (Id.) Plaintiff asserted she experiences side effects from her medications that made it difficult for her to focus, concentrate, and be present, and, for that reason, she does not always take her

8

medication as prescribed.  (Id.)  She further reported counseling was helpful for alleviating her symptoms.  (Id.)

The ALJ also discussed a function report completed by Plaintiff on January 13, 2021, that included further subjective testimony.  The ALJ observed that Plaintiff's statements in the function report were of the same general nature as the subjective complaints from Plaintiff's hearing testimony.  (Id.)  That said, Plaintiff further alleged she had no desire to socialize with friends because of her anxiety symptoms.  (Id., citing Ex. 5E/5.)  Plaintiff also complained she had difficulty handling stress and she was discouraged because of her ongoing physical health problems.  (Id., citing Ex. 5E/7.)

After considering the evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are inconsistent with the residual functional capacity assessment herein."  (Id.)

The Court now addresses only those sections of testimony Plaintiff takes issue with.

**A.    Frequency of Treatment**

Regarding frequency of treatment, the ALJ discussed this issue in various aspects of Plaintiff's medical record.  For example, the ALJ considered Plaintiff's allegations regarding the severity and frequency of her migraines but found Plaintiff's allegations were not consistent with the medical record.  (AR 24.)  At the hearing, the ALJ observed that Plaintiff stated that from the alleged onset date through 2022 she experienced significant migraines that occurred about 10 times per month and lasted for up to 48 hours per episode.  (Id.)  However, the ALJ found that Plaintiff's assertions were not corroborated by treatment records, which showed only intermittent subjective complaints of headache symptoms for which she sought infrequent treatment.  (Id.)  The ALJ noted that "[o]n January 15, 2021, Plaintiff complained of headaches that came and went, which would suggest they were only inconsistent or intermittent and frequency (Ex. 3F/18)."  (AR 24-25.)

In addition, the ALJ observed that "[b]ecause of subjective complaints of neurological symptoms including syncope episodes and headaches, the record suggests the claimant received

neurological referrals as early as 2019, but did not follow-up with a neurological specialist until approximately October 2021 (Ex. 4F/75-76; Ex. 10F/5-7; Ex. 14F/203)." (AR 25.)

The ALJ then gave the following mid-opinion summary before an in-depth discussion of the medical records:

> The consistency of the claimant's allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates the claimant received treatment for complaints of migraine headaches, degenerative changes of the lumbar spine, asthma, right breast cancer, and mental illness. The lack of more significant and consistent findings over the course of the adjudication period suggests the claimant's symptoms and limitations were not as severe as she alleged. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein. There is no medical source statement from an examining or treating physician that endorses the extent of the claimant's alleged functional limitations.

(Id.)

Later the ALJ discussed that, "[a]s noted previously, the frequency and extent of claimant's treatment for her headaches has be[en] sporadic and infrequent. Additionally, per the claimant's own testimony, she has not experienced significant symptoms beginning around 2023. The record was consistent with her testimony, as there was little to no evidence of any migraine symptoms since 2023." (AR 26.)

Plaintiff does not disagree that lack of frequency of treatment may be used by an ALJ for an adverse credibility determination regarding a plaintiff's subjective complaints. (ECF No. 15, p. 17.) Rather, Plaintiff suggests she gave a good reason as to why she sought only infrequent treatment—namely, due to general delay and then further delay due to the Covid-19 pandemic.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). For example, an adverse inference has been held to be permissible where a claimant "did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). "Another such form of evidence [permissible in creating an

10

adverse inference] is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). "While there are any number of good reasons for not doing so, see, e.g., 20 C.F.R. § 404.1530(c) (1988), a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Id. (internal citation omitted).

Though the ALJ did not explicitly reject Plaintiff's reason for infrequent treatment, the inference of rejecting Plaintiff's offered reason of delay is clear from the opinion. Moreover, during the time pending between the referral in 2019 and acting upon the referral in October 2021, "[t]he lack of more significant and consistent findings over the course of the adjudication period suggests the claimant's symptoms and limitations were not as severe as she alleged." (AR 25.) In other words, it was not only the frequency of Plaintiff's treatment that guided the ALJ but also the content of the records there were available.

Furthermore, Plaintiff does not contend with the ALJ's other reasoning on this point: Plaintiff's own inconsistent testimony. For example, Plaintiff testified that, "I've experienced real bad migraines for, from 2019 to about 2022. And now they're, you know, not as bad . . ." (AR 53.)

Finally, Plaintiff takes issue with the ALJ's analysis of and reliance on a January 15, 2021 emergency room record, where Plaintiff reported "Headache x 1 weeks comes and goes." (AR 715.) Plaintiff directs the Court to other records where Plaintiff indicates issues with her migraines, but it appears that the ALJ considered these records as well. For example,

> The claimant was seen for a neurology consultation on October 28, 2021 and complained of syncope episodes with associated headaches. She complained of symptoms including aura, photophobia, phonophobia, nausea, and vomiting. She further complained of pain radiated to the entire head and neck and described her pain as throbbing, pulsing, sharp, and achy. She stated she experienced these episodes about once a week, that lasted for three days. An examination did not reveal significant neurological findings (Ex. 10F/5-7).

(AR 26.)

> The claimant was seen again for a neurology consultation on January 25, 2023 and continued to complain of syncope episodes with headaches with the same ongoing symptoms as she previously

> reported. The record indicates prior diagnostic studies including MRIs had been normal. A neurological examination remained unremarkable and the claimant received Topamax medication (Ex. 10F/2-4).

(Id.)

Significantly, the records Plaintiff discusses cover the same or similar *testimony* from Plaintiff regarding her migraines. However, the ALJ found that the *medical findings* from these records were either unremarkable or did not reveal significant neurological findings.

At best, the Court views Plaintiff's argument as observing that her own testimony over the years was not always consistent, which is understandable given the nature of migraines. However, resolution of the supportability and consistency of Plaintiff's testimony, both internally and in context of the medical record, is for the ALJ to decide—not the Court. Nor will the Court second guess the ALJ where she has given clear and convincing reasons for rejecting this aspect of Plaintiff's testimony. To that end, the Court finds that the ALJ sufficiently explained why frequency of treatment was used as part of her adverse credibility determination regarding Plaintiff's subjective testimony.

**B.    Working Part-Time**

The ALJ found that "from the alleged onset date through 2021, the record shows the claimant had self-reported earnings that did not reach substantial gainful activity levels, but were fairly significant (as discussed above in Finding 2), despite her alleged limitations (Ex. 12D/1)." (AR 25.)

With regard to this finding, the parties seemingly disagree on how an ALJ may use such a finding. Plaintiff cites to Reddick v. Chater, where the Ninth Circuit discussed that a claimant's activities can bear on a credibility determination; however, "[o]nly if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." 157 F.3d 715, 722 (9th Cir. 1988). The Commissioner cites to Valentine v. Astrue, where the Ninth Circuit upheld an adverse credibility determination supported in part by the claimant's activity level. 574 F.3d 685, 693 (9th Cir. 2009). The Ninth Circuit observed that "[t]he ALJ recognized that this evidence did not suggest [the claimant] could return to his old job

12

. . . , but she thought it did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated." Id.  Thus, as is apparent, Reddick and Valentine are not in conflict but merely applied the same principle to disparate outcomes.

For context, the Court quotes the entirety of the paragraph where the ALJ considered Plaintiff's past part-time work:

> I have considered the claimant's allegations regarding the severity and frequency of her migraines, but find her allegations are not consistent with the medical record.  At the hearing, the claimant alleged that from the alleged onset date through 2022 she experienced significant migraines that occurred about 10 times per month and lasted for up to 48 hours per episode.  Her assertions were not corroborated by treatment records, which showed only intermittent subjective complaints of headache symptoms for which she sought infrequent treatment.  On January 15, 2021, she complained of headaches that came and went, which would suggest they were only inconsistent or intermittent and frequency (Ex. 3F/18).  Because of subjective complaints of neurological symptoms including syncope episodes and headaches, the record suggests the claimant received neurological referrals as early as 2019, but did not follow-up with a neurological specialist until approximately October 2021 (Ex. 4F/75-76; Ex. 10F/5-7; Ex. 14F/203).  Moreover, from the alleged onset date through 2021, the record shows the claimant had self-reported earnings that did not reach substantial gainful activity levels, but were fairly significant (as discussed above in Finding 2), despite her alleged limitations (Ex. 12D/1).  Furthermore, the claimant's assertions at the hearing that because of the severity of her physical health problems, including migraines and back pain, she is not able to do any household chores or cooking is inconsistent with her statements to the psychological consultative examiner, in which she reported she could complete household tasks, was able to sleep through the night, enjoyed doing chores and walking her dog, and was able to take care of self-dressing, selfbathing, and personal hygiene (Ex. 7F/7).

(AR 25.)

From his paragraph alone, it does not appear that the ALJ was using Plaintiff's part-time work as an example of directly mapping onto an 8-hour workday.  Rather, it appears that the ALJ was looking at the part-time work, along with other records, as discounting the severity of Plaintiff's alleged symptoms.  Indeed, the ALJ's opinion in this regard continues for three more paragraphs before specifically addressing medical records individually.  (AR 25-26.)

As in Valentine, the Court finds the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective complaint testimony by identifying other credible evidence that

13

undermined the severity of Plaintiff's complaints.  574 F.3d at 693.

### C.    Inconsistent Statements

The ALJ found that "[Plaintiff's] assertions at the hearing that because of the severity of her physical health problems, including migraines and back pain, she is not able to do any household chores or cooking is inconsistent with her statements to the psychological consultative examiner, in which she reported she could complete household tasks, was able to sleep through the night, enjoyed doing chores and walking her dog, and was able to take care of self-dressing, selfbathing, and personal hygiene (Ex. 7F/7).

Plaintiff acknowledges that inconsistent statements may form a basis for rejecting a claimant's subjective testimony, but she argues here that Plaintiff's testimony at the hearing was not inconsistent with her testimony to the psychological consultative examiner.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct.")

In the June 10, 2021 evaluation, Plaintiff testified that she

> does not need support to take care of self-dressing, self-bathing, and personal hygiene.  The claimant can complete household tasks.  The claimant is able to sleep through the night.  The claimant reportedly is able to pay bill bills and/or handle cash appropriately and is able to go out alone.  The claimant can make decisions and can independently manage medications.  The claimant enjoys walking her dog, doing chores, and visiting with family and friends.  The claimant is able to drive.  The claimant does not have a valid driver's license which she said was because of her history of fainting.  For transportation, the claimant's family or friends drive her.

(AR 1098-99.)

At the hearing, the following exchange occurred between Plaintiff and her attorney:

> ATTORNEY: Before the cancer treatments from 2019 to 2023, were you able to do any chores, cooking, cleaning?
>
> PLAINTIFF: I was able to do before then, yes.  I was able to do, you know, a few things.  I will sometimes get in the kitchen, you know, if I didn't have a migraine or my back wasn't bothering me because standing and lying and, lying down and sitting down everything hurt me so when I was able to I did.
>
> I had to, you know, I was able to be a mom to my child.  So, yes, I did try and push myself to do those things[.]

14

(AR 57.)

Plaintiff's argument is unpersuasive. Plaintiff's testimony at the hearing only gave substance that she sometimes would "get in the kitchen." Plaintiff did not otherwise describe which chores, cooking, or cleaning she could do from before her cancer treatment. Yet following her cancer treatment, Plaintiff did testify that she needed assistance "[e]very single day" with cooking and cleaning. (AR 56.) When asked if there were chores or activities Plaintiff could do since receiving breast cancer treatment, Plaintiff stated that she could do not chores or activities, "I was barely able to bathe myself half the time." (AR 57.) Therefore, the ALJ's use of the phrase "she is not able to do any household chores or cooking is inconsistent with her statements," is not an uncontradicted statement.

Plaintiff's citation to other records is of no moment, as these records only underscore that there was on some level an inconsistency between Plaintiff's hearing testimony and the testimony in other records. (See AR 374-76, 1102.)

The Court finds that the ALJ identified inconsistencies in Plaintiff's testimony. An ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct. Therefore, the ALJ did not err.

**D.     Inconsistent Objective Evidence**

Plaintiff next takes issue with the ALJ's determination regarding Plaintiff's lumbar spine disorder. Plaintiff argues that the ALJ did not identify inconsistent medical evidence and provided an assumption that falls outside the ALJ's expertise.

As relevant here, the ALJ found that,

> I considered the claimant's allegations of disability because of back pain, but find her allegations are not consistent with the record. At the hearing, the claimant complained of significant back pain and radiculopathy symptoms that were partially corroborated by treatment records. However, the record did not show significant evidence of loss of motor strength or balance problems in the lower extremities that would be consistent with the highly restrictive stand/walk limitations she alleged she experienced. Examinations generally indicated claimant's motor strength remained intact in her lower extremities and there was no significant evidence of balance problems (Ex. 2F/44-45; Ex. 6F/4; Ex. 13F/2-7). Furthermore, the record also documents an incident in August 2022 in which the claimant hurt her right knee while

15

> trying to jump over the back of a couch, which suggests a higher level of exertional ability and that her pain symptoms may not of been as severe as she contends with regard to her back (Ex. 12F/85).

(AR 25.)

In support of her position, Plaintiff directs the Court to various records.  First, Plaintiff directs the Court to a January 22, 2021 progress note from Isabel Lee, FNP.  (AR 1565.)  Under objective findings, in a comment regarding musculoskeletal, Lee notes that "The pt has difficulty walking due to pain."  (Id.)  Plaintiff then directs the Court to four other records from Lee with similar findings.  (AR 1576, 1580, 1584, 1592.)

Next, Plaintiff directs the Court to a July 23, 2022 emergency room report that included a physical exam, where under "Musculoskeletal," it was commented: "1 spine ttp."  Under "Neurological," it was commented: "EOMI.  Normal facial strength and sensation.  Normal strength to extremities.  Decreased sensation to LLE. Normal gait."

Plaintiff then directs the Court to a September 6, 2022 record from the J & P Spine Center, Inc., that included a physical exam.  (AR 1510.)  It was noted that Plaintiff's gait was antalgic, and she had limited range of lumbar motion "due to pain."  (Id.)  On both September 6, 2022, and February 6, 2023, Plaintiff received steroid injections.  (AR 1512, 1515-20.)

Perhaps if the Court confined itself to only the section in the ALJ's opinion Plaintiff directed the Court to, the Court might have agreed with Plaintiff.  However, the Court commits error by not reviewing the ALJ's opinion in totality.

In addition to the records discussed on AR 25, the ALJ also heavily discussed Plaintiff's lumbar spine pain later in the opinion.  The Court is compelled to quote this analysis:

> With regard to the claimant's lumbar spine, the record indicates the claimant has degenerative changes.  A CT study of the abdomen on June 24, 2019 noted that there was L5 spondylosis with anterolisthesis of the lumbar spine (Ex. 12F/285).  The claimant was treated on this date for abdominal pain that radiated to her back and an examination showed musculoskeletal tenderness, but normal gait (Ex. 12 F/278-280).
>
> On August 6, 2019 the claimant complained of leg numbness (Ex. 4F/65). Shortly thereafter on September 4, 2019, she presented with complaints of chronic low back pain and pelvic pain.  An examination showed decreased lumbar range of motion and

16

tenderness in the suprapubic area, but the claimant did not have any neurological deficits such as loss of motor strength or loss[] of sensation in the extremities. The claimant was referred for physical therapy treatment (Ex. 2F/44-45).

On January 5, 2021, the claimant complained of left leg numbness over the last couple of years that was worsening. An examination showed sensation to light touch was minimally decreased on the left lower leg and normal on the left upper leg (Ex. 3F/24-25). On January 16, 2021, an MRI study of the lumbar spine showed L4-L5 disc desiccation and broad-based annular bulge, L5-S1 severe degeneration and loss of height with moderate disc bulge, grade 2 anterolisthesis of L5 on S1, and severe stenosis of the bilateral neural foramina with severe encroachment upon the exiting bilateral L5 nerve root (Ex. 3F/30-32). The claimant presented for emergency department treatment for complaints of low back pain with numbness and tingling radiating to her left lower extremity on January 22, 2021 and an examination showed tenderness throughout the spine with decreased range of motion at the lumbar level. She received gabapentin medication and was discharged home (Ex. 3F/16-18).

A subsequent treatment date on April 23, 2021 showed the claimant reported no change to her back pain and left leg radiculopathy symptoms and an examination showed tenderness present throughout the spine and decreased range of motion of the lumbar level (Ex. 5F/16-18). The claimant was seen again for emergency department treatment on August 30, 2021 where she complained of left leg swelling and numbness, but an examination did not show any evidence of extremity edema or tenderness to palpation (Ex. 12F/97-99).

Subsequent examinations on November 29, 2021 and May and June 2022, respectively, showed there was tenderness present at the thoracic and lumbar spine with decreased range of motion. The claimant alleged difficulty walking due to pain, but there was no evidence of weakness or loss of sensation in her extremities, and she continued to receive conservative medication treatment (Ex. 14F/55-56 and 59-66).

The claimant presented for emergency treatment on July 23, 2022 and complained of worsening left lower extremity weakness and numbness. An examination showed lumbar spine tenderness to palpation and decreased sensation to the left lower extremity, but the claimant's gait was normal. The claimant left before the completion of the evaluation and against medical advice (Ex. 12F/91-93).

The record showed the claimant presented for an orthopedic evaluation on September 6, 2022 and complained of low back pain with radiculopathy to the lower extremities. An examination showed range of motion on flexion, extension, and side bending were limited due to pain. The claimant presented with an antalgic gait and complained of tenderness to palpation at the sacroiliac joints, spinous process, and paraspinous muscles. Despite these

17

complaints, the claimant's motor strength remained 5/5 throughout the hips and lower extremities and sensation was within normal limits. The claimant was treated with oral medications to alleviate her pain symptoms (Ex. 13F/2-7). A follow-up examination with this treatment provider on February 6, 2023 showed consistent objective clinical findings and she received an epidural injection (Ex. 13F/8-14).

(AR 26-28.)

Recall that the ALJ initially found that Plaintiff's "allegations of disability because of back pain, but find her allegations are not consistent with the record." The ALJ did not state or imply there were no consistent medical findings to support Plaintiff's testimony, but her testimony was not consistent with other medical record evidence. At best, Plaintiff has identified an inconsistency in the medical record that the ALJ apparently resolved.

In light of the heavy analysis quoted above, the Court discerns no error in the ALJ's analysis of Plaintiff's testimony as it relates to her lumbar spine pain. Furthermore, it is clear that the ALJ gave Plaintiff's testimony, in this regard, some credit based on the physical restrictions in the RFC. (AR 23.)

**E. Cancer**

Plaintiff again argues that her testimony, as it relates to her cancer treatment and how that bears on her abilities, was not inconsistent with the objective medical evidence.

Regarding this, the ALJ summarized Plaintiff's testimony as follows:

> The claimant testified she was diagnosed with breast cancer in 2023 and was receiving ongoing treatment. She stated th[a]t she began chemotherapy treatment in April 2023 and recently completed this treatment. She stated she was undergoing immunotherapy and radiation therapy at the time of the hearing. Since her cancer diagnosis in 2023, the claimant alleged her tolerance for exertional activities such as sitting and standing is even less than they were prior to her diagnosis and she experienced neuropathy in her upper and lower extremities. Moreover, as a result of her cancer treatment, the claimant complained of side effects including brain fog, difficulty gathering her thoughts, stomach pain, elevated heart rate, and chest pain. The claimant testified she requires help with household chores and cooking and relies on other family members to complete these tasks. She alleged she is barely able to address her own self-care needs.

(AR 24.)

In discrediting at least some portions of Plaintiff's testimony in this regard, the ALJ

18

discussed:

> I further considered the claimant's allegations of complications from her breast cancer diagnosis in 2023 that further limited her ability to perform exertional activities and caused side effects including brain fog, cognitive issues, and stomach and chest pain, but find her allegations are not consistent with treatment records. Her cancer treatment records do not reflect these complications, as the claimant consistently reported feeling well and did not report significant complications other than some fatigue (Ex. 15F/2, 6, and 22; Ex. 17F/5, 42). While the record indicates the claimant had an acute episode of sepsis in August 2023, she recovered quickly and did not experience any residual symptoms or complications (Ex. 16F/2-3). Accordingly, I find the claimant's allegations of chronic cancer side effects were not fully consistent with the record.

(AR 25.)

The Court observes that the ALJ continued in her discussion later in the opinion as well:

> With regard to the claimant's right breast cancer, the record indicates the claimant was diagnosed in February 2023. On February 2, 2023, a diagnostic bilateral mammogram with ultrasound screening showed a lesion in the right breast and a subsequent biopsy on February 6, 2023 showed invasive ductal carcinoma, grade 3, triple negative (Ex. 15F/2, 73, and 83-86).

> The record indicates the claimant was initiated on chemotherapy treatment and on May 15, 2023, a treatment note indicated she tolerated her first five treatments well and other than some pain in her wisdom tooth, she did not report any complaints (Ex. 15F/30).

> * * *

> The record shows the claimant experienced an acute complication and was admitted for hospital treatment from August 14-20, 2023, for an episode of sepsis that included fever, nausea, body aches, and dry cough. She reacted positively to treatment and was discharged home in stable condition (Ex. 16F/2-3). A treatment date shortly thereafter, on August 23, 2020, indicated she was feeling well (Ex. 17F/42).

> An examination on September 13, 2023 showed right breast mass had decreased since the last examination and a treatment note on October 1, 2023 indicated the claimant had experienced good response to chemotherapy (Ex. 17F/29-31 and 33-35). A CT study on October 10, 2023 showed marked decrease in size of previously described focal asymmetry within the deep tissues of the right breast reflecting response to therapy (Ex. 17F/25-27). On October 17, 2023, the claimant underwent lumpectomy surgery for excision of the remaining neoplasm (Ex. 17F/1011). A follow-up visit on November 1, 2023 noted the claimant was feeling well and was recovering well from surgery. An examination was generally unremarkable (Ex. 17F/5-7).

19

(AR 28-29.)

Plaintiff does not dispute that when objective medical evidence in the record is inconsistent with a claimant's testimony, an ALJ may use this in making an adverse credibility determination. Rather, Plaintiff argues that her testimony, especially regarding fatigue, is congruent with the medical record. On this score, Plaintiff's argument attempts to split hairs. Indeed, the ALJ agreed that Plaintiff reported some fatigue, which is congruent with Plaintiff's testimony. However, the ALJ also cited to records indicating that Plaintiff was at times feeling well, tolerating treatment, and had unremarkable exams. Furthermore, the ALJ found that Plaintiff's testimony was not "fully consistent with the record," indicating that some portion was consistent.

Thus, Plaintiff's attempt to imply that there was no inconsistency in the record is without merit. In light of the foregoing, Plaintiff's remaining contentions are likewise without merit.

* * *

The Court finds that ALJ's rationale in her analysis of Plaintiff's subjective complaints is clear enough that it has the power to convince. Smartt, 53 F4th at 499. Accordingly, the ALJ did not err.

## IV.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Carla Jackson. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **February 24, 2026**

STANLEY A. BOONE
United States Magistrate Judge

20